**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **WASEEM DAKER,** | : | |
| | : | |
| **Petitioner,** | : | |
| **v.** | : | **Case No. 7:26-cv-61-MTT-CHW** |
| | : | |
| **WARDEN CURTIS CARTER,** | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

*Pro se* Petitioner Waseem Daker, an inmate currently confined in the Hays State Prison in Trion, Georgia, has filed an application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254, seeking his release from segregated confinement (ECF No. 1). He has also filed a motion to vacate or modify the Court's April 3, 2023, filing injunction (ECF No. 2); a motion to expedite the review of this case pursuant to Rule 4 of the rules governing habeas corpus actions (ECF No. 6); and two motions seeking the recusal of the undersigned Magistrate Judge and United States District Judge Marc Treadwell (ECF Nos. 7, 8). For the following reasons, Petitioner's motions for recusal are **DENIED**, and it is **RECOMMENDED** that (1) this case be **DISMISSED without prejudice** as duplicative of at least two other actions he filed in the Northern District of Georgia and (2) his motion to vacate or modify the filing injunction be **DENIED.** Petitioner's motion for expedited screening is **DENIED as moot.**

### I. Motions for Recusal

Petitioner first seeks recusal based on events that occurred beginning on or about

September 8, 2026. ECF No. 7 at 3. Petitioner contends that he called both my chambers and the chambers of Judge Treadwell around that date and left voicemails requesting that the Court expedite Rule 4 review of the petition in this case. *Id.* He contends these "voicemails were respectful and professional and were not threatening or harassing in any way." *Id.*

Petitioner contends that the next day, both I and Judge Treadwell "erroneously assum[ed] that Petitioner had a cellphone" and "called the Georgia Department of Corrections ('GDC'), and HSP, and reported that Mr. Daker allegedly had a cellphone and requested that GDC and HSP officials investigate Petitioner and shake him down for a cellphone." ECF No. 7 at 3. Petitioner further contends, "That same day, GDC officials thoroughly shook down Petitioner's cell, property, and his person searching for a cellphone but did not find any." *Id.* Petitioner also alleges that on September 15, 2026, the HSP warden "informed Petitioner that Judge Treadwell and Magistrate [Judge] Weigle had forwarded their voicemails to the GDC and to him for investigation of Petitioner for alleged possession of a cellphone, which would be the crime of unauthorized possession of contraband in violation of OCGA § 42-5-18(b)-(c)." *Id.* And finally, Petitioner alleges that "[o]n October 13, 2026, Judge Treadwell and Magistrate [Judge] Weigle retaliated against Petitioner for his Motion to Recuse by again calling the . . . [GDC] and HSP and again reporting that Mr. Daker allegedly had a cellphone and requesting that GDC and HSP officials investigate Petitioner and shake him down for a cellphone." ECF No. 8 at 5. Petitioner contends "GDC officials again thoroughly shook down Petitioner's cell, property, and his person searching for a cellphone, but, once again, they did not find any."

*Id.*

The legal basis for Petitioner's recusal motion is 28 U.S.C. § 455. ECF No. 7 at 5. 28 U.S.C. § 455(a) requires the judges of this Court to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned." The statute also enumerates certain other circumstances requiring a judge to disqualify himself. 28 U.S.C. § 455(b)(1)-(5). Petitioner's contentions that the Court is impermissibly biased against him could arise under § 455(a) or § 455(b)(1), which requires a judge to recuse if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" Petitioner also contends that the judges assigned to this case "are likely to be . . . material witness[es] in the proceeding," ECF No. 7 at 11, such that recusal is required under § 455(b)(5)(iv).

A. <u>Recusal under 28 U.S.C. § 455(a) and § 455(b)(1)</u>

Petitioner first raises claims of bias and impartiality under 28 U.S.C. § 455(a) and § 455(b)(1). The standard under § 455(a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted); *see also Liteky v. United States*, 510 U.S. 540, 551, 555 (1994) (recusal only warranted where judge exhibits "such a high degree of . . . antagonism as to make fair judgment impossible" or a bias towards a party "so extreme as to display clear inability to render fair judgment"). 28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of

disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)).

In this case, Petitioner first suggests that the Court has created the appearance of impartiality and displayed impermissible personal bias against him because it has "unreasonably and inexplicably delay[ed]" its review of the Petition. ECF No. 7 at 7; ECF No. 8 at 7-8. As an initial matter, a complaint about a judge's timeliness does not generally "constitute the sort of 'pervasive bias' that necessitates recusal." *Loranger v. Stierheim*, 10 F.3d 776, 780–81 (11th Cir. 1994). Additionally, the Court acknowledges that Petitioner's cases often take additional time to review, but any purported delay in reviewing this case cannot be attributed to any bias of the Court. Petitioner regularly files duplicative cases and cases that contain factual allegations and claims that overlap in multiple pending lawsuits. This Court has found this practice amounts to an abuse of the judicial process. *See, e.g., Daker v. Dozier*, No. 5:17-cv-0025-CAR, 2017 WL 3037420, at *5 (M.D. Ga. July 18, 2017) (finding that Petitioner "knowingly brought claims that were essentially the same as those he was actively litigating in, not one, but two other cases before this Court" and dismissing as duplicative, malicious, and as an abuse of the judicial process), *aff'd sub nom Daker v. Ward*, 999 F.3d 1300 (11th Cir. 2021).

Petitioner is also subject to filing restrictions in each of the three federal districts in Georgia because of his repeated abuse of the judicial process, including his filing of frivolous and duplicative claims. *See, e.g., Daker v. Ward*, No. 5:22-CV-340 (MTT), 2023 WL 2759037, at *2 (M.D. Ga. Apr. 3, 2023) (explaining sanctions imposed by the

Northern and Southern Districts of Georgia and imposing similar sanction in this Court), *aff'd sub nom. Daker v. Comm'r, Georgia Dep't of Corr.*, No. 24-13074, 2026 WL 72764 (11th Cir. Jan. 9, 2026). Thus, the Court must spend an inordinate amount of time in each of Petitioner's cases to ensure that his claims are not currently pending in this or any other court, that he has complied with all relevant sanctions orders, and that he is not attempting to further manipulate or abuse the judicial process. Recusal based on this delay is therefore unwarranted.

Most of the remainder of Petitioner's motions is devoted to his contention that I and Judge Treadwell created the appearance of impartiality and displayed impermissible bias against him because we "contact[ed] prison officials and falsely report[ed] Mr. Daker for alleged possession of a cellphone" on September 9, 2026. ECF No. 7 at 10. He also contends that we retaliated against him on October 13, 2026, by again "contact[ing] the GDC to get Petitioner shaken down or to report him for allegedly having a cell phone[.]" ECF No. 8 at 13. Petitioner contends these alleged actions require recusal under § 455(a) and § 455(b)(1) because (1) the assumption that Petitioner was using a cell phone to contact chambers "was both false and erroneous," ECF No. 7 at 10; (2) contacting prison officials "was not judicial in nature but was investigative or prosecutorial in nature," *id.*; (3) by contacting prison officials, both I and Judge Treadwell "effectively became complaining witnesses against Mr. Daker in an alleged criminal investigation," *id.*; (4) I and Judge Treadwell "committed the tort of slander" against Petitioner in violation of Georgia law, *id.* at 10-11; (5) the contact with prison officials "constitutes improper *ex parte* communications," *id.* at 11; (6) the contact with prison officials caused me and Judge

Treadwell to "acquire[] personal knowledge of disputed evidentiary facts," *id.* at 11-12; (7) the contact with prison officials "demonstrated bias or prejudice against" Petitioner, *id.* at 12; and (8) the contact with prison officials calls my impartiality the impartiality of Judge Treadwell into question, *id.* *See also* ECF No. 8 at 10-13.

Petitioner's arguments are not supported by the facts in this case.[1] First, neither I nor Judge Treadwell have ever contacted prison or GDC officials, nor did either judge direct the Clerk's office to contact prison or GDC officials or have any prior knowledge of this contact. Second, the record does not indicate that the Clerk's office staff alleged or reported that Petitioner had used a contraband cell phone to contact the Court or suggested that prison officials take any investigatory or disciplinary action against Petitioner regarding the phone calls.

Although Petitioner contends that he made telephone calls to my chambers, ECF No. 7 at 3, I was never made aware of any such calls or voicemails from Petitioner. I have not had any communication with prison officials and did not instruct any member of my staff to contact prison officials. I only became aware after the fact that Petitioner had been in contact with Judge Treadwell's chambers and that a member of the Clerk's office staff had subsequently made contact with prison officials.

As to Petitioner's calls to Judge Treadwell's chambers, the actions of the Clerk's

---

[1] "Section 455 does not require the judge to accept all allegations by the moving party as true. If a party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986).

office and the general substance of the communication between Defendant Ford and the Clerk's office were documented on the Court's internal docket in this case on September 8, 2026. According to this docket entry, Judge Treadwell's chambers received multiple calls from Petitioner in the weeks preceding the events described by Petitioner in his motions for recusal, including a call at 3:11 p.m. on September 7, 2026. The caller ID for the September 7th call displayed the name of an individual who was not Petitioner and did not appear to be affiliated with Hays State Prison, and the phone number that was displayed was not affiliated with an area code anywhere near Hays State Prison.

Unbeknownst to either judge assigned to this case, a representative of the Clerk's office later contacted the GDC and spoke with Benjamin Ford, Deputy Director of Field Operations. The Clerk's office representative advised Mr. Ford that Judge Treadwell's chambers had been receiving calls from Petitioner, identified the name and phone number from which the September 7th call was received, and informed Mr. Ford that Petitioner should not be calling judges' chambers directly. At Mr. Ford's request, the staff member did forward the September 7th voicemail left on Judge Treadwell's chambers line to Mr. Ford, but the staff member did not suggest that the GDC or any prison official take any disciplinary or other action against Petitioner.[2] Any conclusions that GDC or prison officials drew from that information—and any action those officials took based on those conclusions—cannot be attributed to the Clerk's office, much less to the judges assigned

[2] In describing Mr. Ford's response to the information provided by the Clerk's office representative, the docket entry states, "Mr. Ford stated that he is certain that Mr. Daker was using a contraband cellular telephone and advised that he would immediately contact the appropriate personnel to conduct a shakedown."

to this case. Thus, Petitioner's contentions that the judges "erroneously assumed" Petitioner had a cellphone and conveyed that information to GDC or prison officials; were aiding in investigation or prosecution of a state court criminal case or became complaining witnesses in such a case; committed slander; engaged in *ex parte* communication; or acquired any personal knowledge of disputed evidentiary facts fail to support Petitioner's request for recusal.

Neither judge in this case was aware that a member of the Clerk's office staff had contacted GDC officials until after that contact occurred, and no individual representative of chambers or the Clerk's office suggested that any investigatory or disciplinary action be taken against Petitioner regarding his phone calls to chambers. Rather, the Clerk's office merely informed Mr. Ford that Petitioner should not call the judges' chambers directly. This information is entirely consistent with the Court's policy prohibiting a party's ex parte communication with the judges to whom his case is assigned, the Federal Rules of Civil Procedure, and applicable law. *See, e.g.,* M.D. Ga. Guide for Self-Represented Litigants, Section II.G ("All parties, including self-represented litigants, are prohibited from private or ***ex parte*** communication with the judge to whom your case is assigned. . . . Any communication between the assigned judge and a litigant should be in writing, with a copy of the communication sent either to the opposing party or to that party's attorney."); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Env't Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 481 (5th Cir. 1980) (observing that "courts speak to litigants by orders or minute entries or judgments, or, on occasion, at conference in chambers," and "[e]x parte communications with judges are generally disfavored")

(citing Code of Judicial Conduct for United States Judges, Canon 3A(4)).[3] The fact that the Clerk's office—and not the judges' chambers—contacted prison officials without the judges' knowledge and provided direction consistent with the Court's established policies and rules simply fails to show any bias or appearance of impartiality on the part of the either judge assigned to this case. Recusal pursuant to 28 U.S.C. § 455(a) and (b)(1) is therefore inappropriate.

B. Recusal Under 28 U.S.C. § 455(b)(5)(iv)

Finally, Petitioner contends that the judges' action in contacting GDC or prison officials could be used as an excuse to keep Petitioner on segregation. ECF No. 7 at 11. Because he is challenging his placement and retention in segregation in this action, Petitioner surmises that each judge is "likely to be a material witness in the proceeding, such that their recusal is required by 28 U.S.C. § 455(b)(5)(iv)." *Id.* "Unsubstantiated speculation about the possibility that the judge will be required to be a material witness concerning a disputed issue is not enough to require recusal under § 455(b)(5)(iv)." *United States v. Lanier*, No. 2:14-CR-83, 2018 WL 296725, at *3 (E.D. Tenn. Jan. 3, 2018) (citation modified); *see also Statton v. Kiser*, No. 8:18-cv-2345-T-60SPF, 2019 WL 6975091, at *4 (M.D. Fla. Dec. 20, 2019) (defining "material witness" as one "who gives testimony going to some fact affecting the merits of the cause and about which no other witness can testify" (quoting *Callahan v. Campbell*, 427 F.3d 897, 919 (11th Cir. 2005)).

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Petitioner's allegations that prison officials could, at some unspecified time in the future, use the phone calls as a reason to keep him on segregation *and* that the judges in this case would be material witnesses if that eventually occurred are nothing more than speculation and cannot serve as a basis for recusal. *See Greenough*, 782 F.2d at 1558 (observing that "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation").

In sum, Petitioner has failed to identify any legitimate reason for the recusal of either of the judges who are assigned to this case. His motions to recuse (ECF Nos. 7, 8) are **DENIED.**

**II. Rule 4 Screening**

Under Rule 4, district courts are required to promptly examine every application filed and thereafter enter a summary dismissal "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994); 28 U.S.C. § 2243. This review establishes that it is plain on the face of the Petition that Petitioner is not now entitled to relief in this Court because his Petition is duplicative of at least two other actions he filed in the Northern District of Georgia.

On December 12, 2025, a United States Magistrate Judge in the Northern District of Georgia recommended the imposition of contempt sanctions in the amount of $1250.00 against Petitioner in that court for filing duplicative motions. ECF No. 8 at 5-6 in *Daker v. Oliver*, Case No. 1:25-cv-06854-SDG (N.D. Ga. Dec. 12, 2025) ("*Daker I*"). The court noted that it had recommended contempt sanctions totaling $4750.00 in multiple cases filed

by Petitioner in that court and additionally recommended that "all pending cases in which [Petitioner] is a party be administratively stayed pending replenishment of the bond and the full payment of any monetary sanctions imposed by the Court." *Id.* at 6-7. On March 30, 2026, the United States District Judge entered an order staying nearly a dozen cases filed in the Northern District of Georgia until Petitioner replenished the bond and paid the required sanctions. ECF No. 24 at 19 in *Daker I.*

Among the cases stayed in the Northern District is *Daker v. Jones*, 4:25-cv-00084-SDG (N.D. Ga. Apr. 11, 2025) ("*Daker II*"). *Daker II* is a 200-plus page federal habeas corpus petition filed pursuant to 28 U.S.C. § 2254 in which Petitioner is challenging his "placement on segregated confinement." ECF No. 1 at 1 in *Daker II.* In his court-ordered amended petition in that case, filed on July 10, 2025, Petitioner contends he did not receive procedural due process when he was initially assigned to Tier II in Smith State Prison in August of 2022, or during any subsequent review of his status through April 24, 2025, by which time he had been transferred to Hays State Prison. ECF No. 10 at 22-28 in *Daker II*. He further listed dozens of disciplinary reports for which he contended he was not afforded due process. *Id.* at 29. He specifically identified three disciplinary reports that "are relevant to Petitioner's initial placement on Tier II" in Smith State Prison, and thirteen more that "are relevant to Respondent's keeping Petitioner's current placement on Tier II." *Id.* at 30. He also describes two incident reports for which he contends he was not afforded due process, and he contends those incident reports were also relevant to prison officials' decisions to keep him in Tier II segregation. *Id.* at 30-31.

Petitioner filed a notice of address change in *Daker II* on September 29, 2025, indicating that he had been transferred to Valdosta State Prison. ECF No. 18 at 1 in *Daker*

*II*. He filed another document emphasizing that his transfer from Hays State Prison to Valdosta State Prison did not moot his claims because he remained on segregated confinement at Valdosta State Prison as "a continuation" of his previous segregated confinement. ECF No. 43 at 1-2 in *Daker II*. Petitioner asserted that "once jurisdiction has attached in a particular district upon the initial filing of the Petition, jurisdiction is not destroyed by a Petitioner's transfer and accompanying custodial change." ECF No. 43 at 2-3 in *Daker II*.

At the same time *Daker II* was pending, Petitioner was also prosecuting *Daker I*. In *Daker I*, Petitioner originally filed a complaint in state court that was removed by Defendant Tyrone Oliver to the Northern District of Georgia. *See* ECF No. 3 at 1 in *Daker I*. The court determined that Petitioner had "assert[ed] claims based on two distinct types of alleged harm: those related to the GDC's enforcement of its grooming policy against him and those concerning his placement and retention in Tier II confinement." *Id.* As a result, the court severed the claims concerning Petitioner's placement and retention in Tier II confinement, opened a separate civil action for those claims, and directed Petitioner to file an amended complaint limited to "the alleged denial of procedural due process (1) in connection with disciplinary reports #946076, #946521, #946522, #946523, and #946524; (2) his assignment to Tier II segregated confinement based on those disciplinary reports; and (3) his continued assignment to Tier II." ECF No. 3 at 7 in *Daker I*. In addition, the court noted that Petitioner had also filed *Daker II*, "a separate habeas action in this Court that *also* challenges his placement on Tier II confinement." *Id.* at 5.

On December 29, 2025, while he was incarcerated in the Valdosta State Prison ("VSP"), he filed his amended complaint in *Daker I*. *See* ECF No. 13 at 4, 100 in *Daker*

*I*. Then, on January 7, 2025, Petitioner filed a motion for leave to file a second amended and supplemental complaint. *See* ECF No. 16 at 126 in *Daker I*. Although the court had restricted the scope of the case to disciplinary reports #946076, #946521, #946522, #946523, and #946524, Petitioner sought to amend his complaint to include multiple additional disciplinary or incident reports that he contends were considered in placing him on Tier II. *Id.* at 3-5.

The Petition in this case is signed and dated January 19, 2026, more than a month after the magistrate judge entered the recommendation to stay all Petitioner's pending cases in the Northern District, including *Daker I* and *Daker II*. ECF No. 1-1 at 83. In the present Petition, Petitioner again contests the decisions of the GDC Central Office Management Team; the Smith State Prison management team; the Hays State Prison management team; and the Valdosta State Prison management team to place and keep him on Tier II segregated confinement. *Id.* at 3-4. He challenges dozens of disciplinary reports he has been issued at six different prisons, including (but certainly not limited to) disciplinary reports #946076, #946521, #946522, #946523, and #946524. *See id.* at 21-22, 30-36. He also challenges his initial assignment to Tier II beginning in August of 2022 at Smith State Prison. *Id.* at 45. Petitioner argues that although "Tier-II segregation is supposed to be a nine (9)-month segregation program, they have kept Petitioner on Tier-II segregation for three and a half years from August 23, 2022, though and including present-day." *Id.* at 53. He states that prison officials have justified his continued retention on Tier II by "cit[ing] Petitioner's alleged disciplinary or assaultive history," even though this history is "either false, or if true, justified under Georgia law." *Id.* He also contends that his due process rights were violated in connection with every disciplinary report he has

received, that "most, if not all, allegations of misconduct made against him are in fact retaliation for his filing grievances and lawsuits against GDC employees," and that his retention on Tier II "is itself retaliation for his filing grievances and lawsuits against GDC employees." *Id.* at 53-54.

It is plain to the Court that Petitioner has already filed at least two separate actions comprehensively challenging his placement and retention on Tier II that are already pending in the Northern District of Georgia, including one § 2254 petition, and that his claims in this case duplicate these earlier efforts. The Court recognizes that as a general rule, "where a new pro se petition is filed before the adjudication of a prior petition is complete, the new petition should be construed as a motion to amend the pending petition rather than as a successive application." *Daker v. Toole*, 736 F. App'x 234, 235–36 (11th Cir. 2018) (quoting *Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008)). In this case, however, the prior pending petition raising the same claims as this case is stayed. *See generally* ECF No. 46 in *Daker II.* Petitioner may therefore seek leave from the Northern District of Georgia to file the Petition in this case as an amended petition in *Daker II* when that case is reopened, if appropriate and desired. But Petitioner cannot avoid the consequences imposed by the Northern District by filing anew here, particularly when Petitioner has already taken the position that his transfer to other prisons does not moot his previous claims and has a reputation for "flout[ing] court rules simply for purposes of harassment." ECF No. 44 at 8 in *Daker II.* It is therefore **RECOMMENDED** that this Petition be dismissed without prejudice as duplicative. Petitioner's pending motion to expedite Rule 4 screening (ECF No. 6) is also **DENIED as moot.**

Petitioner also has pending before the Court a motion to modify the Court's April 3, 2023, filing injunction (ECF No. 2). Petitioner requests that the Court (1) vacate the requirement that he be required to attach a copy of the order imposing the injunction to all his lawsuits; and (2) vacate, modify, or stay the contempt-bond requirement. ECF No. 2 at 5, 11. This motion appears intended to excuse Petitioner's failure to comply with the April 3, 2023, injunction by failing to attach a copy of the injunction to his lawsuit and by failing to pay the $1500 contempt bond. If the Court adopts the recommendation to dismiss the Petition as duplicative, there is no reason to rule on this motion. It is therefore **RECOMMENDED** that the motion (ECF No. 2) be **DENIED as moot.**

Petitioner has no absolute entitlement to appeal a dismissal of his claims. Before he may appeal, the district court must first issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2254, Rule 11(a); *Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003) ("[S]tate prisoners proceeding under § 2241 must obtain a COA to appeal."). If "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a COA will not be issued unless the prisoner can show, at least, "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Because it is clear on the face of this application that the Petition is duplicative, reasonable jurists could not find that a dismissal of the instant action was debatable or wrong. It is thus **RECOMMENDED** that Petitioner be **DENIED** a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir.

2000) (per curiam) (approving denial of COA before movant filed a notice of appeal).

Pursuant to the Memorandum of Understanding with the Attorney General of the State of Georgia, it is **DIRECTED** that a copy of the Petition (ECF No. 1) and this Recommendation of Dismissal shall be served on the Attorney General and Respondent electronically through CM/ECF and they may, **but are not required to**, respond to the Recommendation of Dismissal.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO RECOMMENDED**, this 9th day of November, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge